Good morning, Your Honors. May it please the Court. Joseph Porta on behalf of the petitioner. Xun Li. This is an Affirmative Without Opinion, so essentially the Court is reviewing the immigration judge's decision, a decision that was based on two parts. First, on an adverse credibility determination, and second, based upon assuming that the petitioner was credible whether he satisfied his burden for asylum, withholding, and relief under the Convention Against Torture. First, I would like to address the credibility determination. There are multiple reasons that the immigration judge gave for the credibility determination, all of which do not withstand scrutiny. These reasons are illogical, they're not based on cogent reasoning, and they're primarily rest upon speculation. I'll take those in order. The first one is the immigration judge found that the petitioner was not credible because he didn't understand why North Koreans that were fleeing persecution in North Korea would go to China, and he used that determination to say that the petitioner was not telling the truth. Now, the petitioner doesn't have personal knowledge necessarily why people are fleeing from a country. This isn't specific cogent reasoning. There's no inconsistency. Well, in fact, it's contrary to several congressional findings and documents of the United States and the humanitarian agreement between the United States and China as to the treatment of North Korean refugees. Isn't that correct? That's correct, Justice Wardlaw, which will take me to the second point. The second point is why the petitioner didn't flee somewhere else. The petitioner here left China, stopped off in South Korea for a short stint before he flew to Canada, and then he crossed into the border into the United States. I believe he's also in Japan. He was told by the individuals, by the snakeheads that helped smuggle him out of China that if he was caught somewhere else, he would be extradited back to China. It was just a short stint. The fact that he chose not to go somewhere else, I don't see how that holds on his credibility as to whether he was persecuted, he was beaten, he was detained, he was stripped down to his underwear and forced to stand out in a freezing cold handcuffed to a pole. I don't see why his choice of where to escape really fits within that rubric. Third, the immigration judge found that the petitioner was incredible because he didn't have any problems before. So under this logic, as long as you're not caught doing something, you're not credible. He was caught at his house having a house church gathering that he hosted for that time, and he was arrested. They had North Korean refugees inside the house and they were also conducting a religious service. There's really no inconsistency again to base this determination on. Next would be the number of church meetings that the petitioner had. The immigration judge took issue with this point because the petitioner worked in China as a tour guide and part of his routine, let's say, was that part of the year was the high season for tourism and he was out conducting the tours. The remainder of the time he was back at home doing paperwork and signing up new people to do the tours. The petitioner testified that he held, I believe it was, eight meetings at his house during approximately a seven-month period, and he also testified that the meetings rotated amongst members. There's no testimony indicating that maybe they didn't double up on meetings or some people skipped a meeting. There's really nothing there to base it against. It's just based upon the judge's speculation. The next item would be which is incredible, is why the petitioner needed to be in the United States to practice his religion and that he had no knowledge of the registered churches in China. The petitioner testified that he attended a house church. He testified that he did not attend a registered church. It's really disingenuous to force the petitioner to know the teachings of a church to which he does not belong. For lack of not knowing those doctrines that that church teaches, that's a government church, to find him incredible. Next would be the immigration judge found that the petitioner because he testified he came to the United States to seek a better life, that that basically found him not credible. This is, again, disingenuous. This was after the petitioner testified that he was arrested, beaten, detained, forced to strip down in his underwear, and forced to be in the cold during the winter for approximately 30 minutes. I've heard stories on the news about when people were fighting during the Korean War how people used to get extreme frostbite just from being there. Yes, I am aware. The next point would be why would the petitioner spend so much money to flee China if his flight was only temporary? The petitioner here was in a situation where he didn't know what was going on. He was persecuted. He was fleeing. And at that point in time, China is his country. China is where he's from. He didn't want to be there, so he thought maybe things would get better. I'm going to leave. And at that point in time, he really can't be charged with not telling the truth or being incredible because he said, hey, maybe things will get better. I'll come back when things are better. But the important thing is that he had the subjective fear. He left at that point. The final issue which I believe is an important issue is the train ticket that the petitioner was pointing at. The petitioner testified that he left China on the 20th. And he presented a train ticket to the court that indicated the date of the 10th. The petitioner was confronted with this discrepancy and he testified, look, there is a discrepancy in the date. He testified that it was the conductor that had made a date discrepancy in printing the ticket. Now, all of this happened subsequent to his persecution. It happened in his flight. It's not central to his claim. There's really no other reason other than a discrepancy in dates. So are you conceding that the IJ could look on that as an inconsistency, but your argument is it doesn't matter because it's not a material inconsistency? Well, it clearly is. There's two things. First, if I say that it's an inconsistency, in some aspects it is because he testified 20, the ticket says 10. That is an inconsistency. And that's kind of a classic issue for the finder of fact to resolve, you know, when he's faced with two different dates, which do you believe? What does it matter which date he left? Does it go to whether or not he was persecuted? Now, if he had testified, let's say, for example, that, look, I signed this confession on February 10th and the police made a mistake and said it was February 20th, that would just wipe out his entire claim because it deals with the persecution. He had no troubles in his flight. His flight occurred after the persecution, so I would argue, Your Honor, that it is immaterial. It doesn't go to the heart of the claim. This is a pre-real ID act. Now, the next issue is assuming that all those bases for credibility fail, the petitioner's testimony is taken as true. And here the immigration judge did assume the petitioner's credibility in the alternative. And there's two reasons why the petitioner was persecuted. One was because when he was holding the house church at his house, he had some North Korean refugees in attendance of the service. And second, because he was holding a house church. Now, again, this is a pre-real ID act. It doesn't have to be a central reason for the persecution. It just has to be part of the reason for the persecution. And I believe the record compels the conclusion that part of his persecution was on the basis of religion. After he was beaten and suffered this mistreatment, he was forced to sign a confession whereby he had to forego his religion. There is no way that you can separate that part of the persecution was due to his religion based upon the fact that he had to sign an agreement. I would like to reserve the remainder of my time. Thank you, Your Honors. Good morning, Your Honors. My name is Beau Stanton. I'm here today representing the United States. Petitioner in this particular case received a full and fair hearing before an immigration judge. The Board of Immigration Appeals affirmed that without an opinion, therefore, as Petitioner stated, he only looked at the immigration judge's decision. The immigration judge in this particular case did, indeed, rest his decision on two alternative bases. The first basis was a credibility determination. The second basis was he didn't satisfy his burden of he didn't satisfy his burden for an asylum application. When reviewing the immigration judge's decision If you accept his testimony, if you setting aside the credibility from isn't what happened to him pretty bad? Well, Your Honor, I assume it's true. If you assume everything's true, reasonable minds can differ on whether or not they believe the harm that the petitioner occurred in this particular case was persecution. That is why immigration He died naked to a pole in the middle dead of winter in China? Perhaps. That's not persecution? What is it? As I was going to mention, Your Honor, that when reviewing these facts it must be compelling enough. It's not enough that if reasonable adjudicators might disagree over whether or not they think it's persecution. The evidence itself must be so compelling that no reasonable adjudicator would be compelled to find otherwise. In this particular case, when you compare this factual situation to, say, PRASA, where the alien in that particular case was beaten, he was and then later on, weeks later, he had rocks thrown in his house, he was threatened. The court in that particular case didn't think the facts in that situation were compelling enough to find that he was persecuted. So whether or not the facts in this particular case are compelling enough, that is up to this panel. But the government would contend that it is not compelling enough because he was only persecuted on one particular occasion. The government in this particular case, or the Chinese government in this particular case, didn't have an ongoing, I would say, interest in the Petitioner beyond making sure that he was upholding the laws of this country. But, excuse me, what law was he violating? He was violating, he was harboring North Koreans. Now, is that a criminal violation in China? Yes, it is, Your Honor. Well, can you cite me to a statute? I can cite you to the U.S. State country reports. There's not a criminal law against harboring, in fact, all the reports that I've had of North Koreans deceased, that there's not a law, a criminal law in China against harboring or helping or giving aid to North Korean refugees. The only criminal law that I can find in China has to do with a law that prohibits smuggling the North Koreans into the country. Can you cite me a law otherwise? Your Honor, if you look to the State Department report, they specifically say that North Koreans that are being smuggled into the country, those people who are smuggling them, what I would say in this particular case, that's what the Petitioner was doing. There's no evidence that he smuggled anybody. Can you point me to one place in the record where, I mean, even the I.J. doesn't say he smuggled people. He said they were found in his house or he had helped them. The I.J. doesn't say he smuggled people. That's the only way he could have violated this particular law. And, in fact, the U.S. policy is to give aid to the North Korean refugees, give humanitarian aid to them. And so what he was doing was something that the U.S. not just sanctions but encourages. In this particular case, Your Honor, I would contend that Petitioner was indeed smuggling because if you look at the record, although the immigration judge did not specifically state Of course, if the immigration judge had found that he was smuggling and violated a specific law, I might be able to agree with you. But the immigration judge never found that. How can we look beyond that? We're not supposed to do that. We're supposed to look at what the immigration judge said. That is correct, Your Honor. You are limited to the decision of the immigration judge. Right. And the immigration judge said, well, harboring in the United States is a crime, so it must be in China. He was wrong. Well, but based on the country report, Your Honor, I have to go back to the country. The country report does not say that giving humanitarian aid to North Korean refugees in China is a violation of Chinese criminal law. There's a government policy that now that there's a crackdown on people who are giving food and shelter to the starving and freezing refugees who are coming across from North Korea, there's a government policy to crackdown on people who are aiding them because the government policy says that they don't want them in their country. But that is contrary to the government's official agreements with the United States. And it's also, it bolsters his political opinion claim because he's acting contrary to a policy. He's not a criminal. Okay. Well, why don't you turn to the credibility since your time is more than half up. Thank you, Your Honor. Well, turning to the credibility determination, the immigration judge provided a cumulative analysis. He said the culmination of these determinations that he relied on was enough to determine that the petitioner in this case was simply not an honest person, was not a credible person. So while there may be missteps along the immigration judge's path that were maybe he was speculating or where he was providing conjecture, that is not enough, though, in order to overturn his decision because the record itself must compel the conclusion that the petitioner in this case was honest. Well, the immigration judge cited 10 different reasons why he didn't believe the petitioner was credible. The first one, I think, is a very important one, is why would the North Koreans be fleeing to China to escape North Korea in order to practice religion? Because the immigration judge said that religion itself in China is also prohibited unless it's registered. So it's difficult for him to reconcile why these North Koreans would want to be fleeing into the United States, not to the United States, but to China. And why this is important, it goes to the heart of his claim because this determines whether or not or helps determine whether or not it was on account of his religion or on account of his political opinion. If he was simply smuggling in North Koreans who wanted to escape North Korea, that's not enough. You have to show that it was on account of religion. And there's nothing in the record to compel the conclusion that the petitioner in this case was indeed helping these people on account of religion. But now it turns out. What is the theory? So they just fled? There's no question that they fled North Korea? No, I don't know. But the idea is, well, they would have gone someplace. They should have gone someplace else? No, the idea is that the North Koreans wouldn't be fleeing North Korea in order to go to China in order to practice their religion. Because to the immigration judge, that was irreconcilable, because why would you leave one place where it's prohibited to go to another country where it's also prohibited unless you register that religion? So is your argument they were fleeing North Korea because they were starving and there were humanitarian and economic reasons why they left? Yes, Your Honor. Did China look better than North Korea from that perspective? Perhaps, Your Honor. What is there to suggest that? If you're known to be practicing an illegal religion in one country, you'll go wherever you can where you aren't known if you're desperate enough. I mean, I don't understand where the I.J. thought they should have gone. The immigration judge wasn't so speaking as to where he thought the North Koreans should have gone. What he was more focusing on is why they were leaving. Because why they were leaving is crucial to whether or not the petitioner's case was doing it based on religious reasons or based on some other reason that's not protected by the Immigration and Nationality Act. Okay. That's what he thought. What's the other credibility? There was a number of other reasons. But taking it along with the religion aspect, the heart of the claim, I'm going to turn to why was the petitioner in this particular case arrested? And the immigration judge, was it ever clear to him from the testimony, from the record, from any of the evidence submitted, why the petitioner in this case was arrested? Was it because of his religion or was it because he was harboring North Koreans? And in this particular case, he said, well, you were able to practice without any interference for over a year. But then on this one night, December 8th, when you just happened to be hosting illegal aliens in your house, that the police come down? It was hard for him to reconcile why he was exactly arrested. The immigration judge is basically speculating that perhaps he wasn't arrested on account of his religion but because he was harboring North Koreans. But that's not a crime in China. That shows the immigration judge's total ignorance, both his comments about why the North Korean would flee North Korea. I mean, if you read anything about North Korea, you know people are starving and they're being treated terribly. They're in detention camps. And once they even get into China, if China's trying to send them back, and if China sends them back, they get killed. It's a capital crime to even leave North Korea. I guess to me that this judge would make these comments just shows a total ignorance of country conditions, both in North Korea and China. Perhaps, Your Honor, but what I would. And how about you? And what do you know about North Korea and China? I know it's not a very pleasant place. I'd rather be here than there. Okay. Well, you have your. Go with Lee. I think that's a good note on which to end this argument. Thank you, Your Honor. Thank you. A couple of quick points, Your Honor. I just wanted to review again with this court what the harm exactly was that the petitioner suffered. First, he was arrested. He was interrogated, during which he was slapped vigorously in the face, followed by being kicked in his chair, causing him to fall over. Then the interrogators proceeded to lift him up by his shirt collar and punch him in the face, which caused him to have a bloody lip and a nose. Afterwards, while he was on the ground, he was kicked in the stomach and kicked in the head, after which he was stripped down to his underwear in freezing weather and chained to a pole for approximately 30 minutes, after which he was sent to a labor camp for 15 days, in which he was beat up routinely by other prisoners, after which he was forced to give up his religion and report to the police. This exceeds the harm in Persaud, clearly. And another case that was found to have persecution in this court, which is Guo, it clearly exceeds the Guo case as well. Guo's detention was less than his. The beating was less severe. There's nothing. And the other couple of other issues raised by government counsel was there's no clear indication why he was arrested. There is. The policeman told him while he was being interrogated, you are having illegal religious meetings and you are harboring North Koreans. Second, there was also Bibles confiscated from the petitioner's home. And furthermore, with regards to why people would flee North Korea, geographically there's nowhere else for them to go. There's a capital crime to leave, and the only place that they can flee would be into China because it's the only adjoining piece of land. Thank you. Thank you. The case just argued is submitted. The next case is Zhang Jikui v. Mukasey, and I'm not pronouncing that right. The case just argued is submitted.
judges: Schroeder, Wardlaw, Tallman